# CHARLESTON.

DUDLEY *et al.* v. BUCKLEY *et als.*

Submitted September 7, 1909.   Decided February 7, 1911.

1.  MORTGAGES—*Requisites—Absolute Deed as Mortgage.*
    A deed of conveyance, absolute on its face, may be shown to be a mortgage.

2.  SAME—*Absolute Deed.*
    A deed for land appearing to be absolute, and reciting a cash consideration of $4,500.00, but which was in fact made to

secure and indemnify the grantee as the accommodation endorser of notes made by the grantor, constitutes the grantee a mortgagee, and not a purchaser.

3.  *Fraudulent Conveyances—Absolute Deed—Equity of Redemption.*

The grantor in such a conveyance is vested with the equity of redemption, and will not be permitted to dispose of it in fraud of the rights of his existing creditors.

4.  SAME—*Form—Absolute Deed as Mortgage—Conveyance by Insolvent Husband.*

If an insolvent husband make such a conveyance, and at the time of making it, or afterwards, agree with the grantee that, upon the payment of the notes to secure which the deed, or mortgage, is given, the grantee shall convey the property to grantor's wife, such an agreement is in fraud of the rights of existing creditors of the grantor; and if the grantor afterwards pay the notes, and the grantee, in pursuance of the agreement, convey the property to grantor's wife, it will be set aside at the suit of the husband's existing creditors. Such conveyance to the wife is without consideration, and amounts in law to a gift from her husband.

5.  SAME—*Position of Voluntary Grantee of One Holding Under Fraudulent Conveyances.*

The voluntary grantee of one who fraudulently acquired title, is in no better position than his grantor.

6.  SAME—*Action to Set Aside—Burden of Proof.*

When a conveyance is attacked as fraudulent, and the fraudulent intent of the grantor is shown, it is incumbent on the grantee to prove that he is a purchaser for value; and if he fails to do so he will be regarded as having been a party to the fraud.

7.  SAME—*Conveyance to Prospective Son-in-Law.*

A man, admitted to be engaged to the daughter, claims to be the purchaser of land from her mother, and very shortly after the alleged purchase marries the daughter and immediately conveys the land to her. *Held:* That for the purpose of ascertaining the good faith of the alleged purchase, he must be regarded as a son-in-law at the time of the alleged agreement.

8.  SUBROGATION—*Right of Surety to Subrogation.*

Whenever a surety is compelled to pay a debt of his principal he is entitled to be subrogated to all the rights and remedies of the creditor against his principal; such rights are not limited to the time of the payment, but are co-extensive with the debt, or obligation.

9. FRAUDULENT CONVEYANCES—*Existing Creditors—Right of Surety to Set Aside.*

A board of education brought suit against a sheriff and his sureties on his official bond, and obtained a judgment for a balance found to be due it, and in the sheriff's hands, and the sureties paid the judgment. Between the ending of his term of office and the date of the judgment, the sheriff had fraudulently procured a transfer of his property to be made to his wife without consideration. *Held:* That being subrogated to the rights and remedies of the board of education, the sureties are to be treated as existing creditors at the time of the fraudulent conveyance, and can have it set aside, and the land subjected to the payment of the debt.

10. SAME—*Setting Aside—Reference to Ascertain Liens and Priorities—Necessity.*

Where a conveyance is attacked and set aside for fraud, an order of reference to ascertain liens and their priorities is not generally necessary. Neither has the fraudulent grantee any right to demand a renting, instead of a sale, of the property.

11. SAME—*Equities of Fraudulent Grantees.*

There are no equities between fraudulent grantees who receive conveyances at different times which will warrant the application of the rule that the land should be subjected in the inverse order of its alienation. Lands in the hands of such alienees are equally liable for the grantor's debts.

12. EQUITY—*Right to Relief—Co-Defendant.*

Notwithstanding the rights of a co-defendant are clearly established by the proof taken on the pleadings between plaintiff and defendant, still no relief can be granted such co-defendant unless relief for him is included in the prayer of plaintiff's bill, or unless he has himself answered and prayed for relief.

(MILLER, JUDGE, absent).

Appeal from Circuit Court, Wood County.

Bill by L. Dudley and others against J. L. Buckley and others. Decree for plaintiffs, and defendants appeal.

*Affirmed in Part, Reversed in Part, and Remanded.*

*Dave D. Johnson* and *V. B. Archer,* for appellants.

*W. H. Wolfe, Jr., F. P. Moats,* and *W. E. McDougle,* for appellees.

WILLIAMS, PRESIDENT:

This is a bill to set aside fraudulent conveyances.

J. L. Buckley was sheriff of Wood county from 1889 to 1893, inclusive. W. H. Wolf, L. Dudley, A. A. McDougle, W. Vrooman, Samuel Stewart, and Thompson Leach were sureties on his official bond given to secure his faithful accounting for the public school moneys that should come into his hands as such sheriff. Upon a settlement had with the Board of Education of Parkersburg district on the 20th day of April, 1898, he was found to be indebted to the Board of Education in the sum of $1,382.95. The Board issued a draft upon him in favor of the then sheriff of Wood county for the aforesaid amount. Buckley refused to honor this draft and thereupon the Board of Education brought an action against him and W. H. Wolfe, L. Dudley, A. A. McDougle, and W. Vrooman, the surviving sureties, Thompson Leach and Samuel Stewart being then deceased. On the 3rd day of December, 1902, judgment was rendered against said Buckley and the above named sureties for the sum of $1,153.89, and costs. Before this judgment was obtained J. L. Buckley had become insolvent, and had filed a voluntary petition in bankruptcy. Pending the bankruptcy proceedings he effected a composition with his creditors at thirty-five cents on the dollar, and on the 2nd day of March, 1899, a decree was entered discharging him from further liability. His obligation to the Board of Education being in the nature of a trust was not compromised, or in any way affected by the bankrupt proceedings.

This judgment was paid by Dudley, Wolfe and Vrooman, three of the aforesaid sureties, and Dudley and Wolfe shortly thereafter brought this suit for the purpose of having certain conveyances of real estate, situate in the City of Parkersburg, set aside for the alleged reason that they were voluntary and fraudulent and made for the purpose of hindering and delaying plaintiffs in the collection of this debt.

Buckley was engaged in the mercantile business in the City of Parkersburg, and had contracted a great many debts. Finding himself to be insolvent, he endeavored to effect a compromise settlement with his creditors, and, thinking he had done so, he made a conveyance of all his real estate to B. F. Stewart on the 17th day of October, 1898. But this attempted compromise failed, and on November 22, 1898, B. F. Stewart reconveyed this property to him; and on the same day Buckley made a general assignmen of all of his property to John H. Mitchell, trustee,

for the benefit of all of his creditors *pro rata.* Immediately after making this general assignment he filed his petition in bankruptcy, and, pending the bankruptcy proceeding, he was enabled to effect the composition with his creditors, as before stated. Acting under decree of the Federal Court, Mitchell, trustee, reconveyed to Buckley the beforementioned real estate, including the lot on Ann Street, the one now in controversy. This lot was then vacant. It appears that the stock of merchandise was sold to one Derwacter, by Buckley on the 28th day of October, 1898, at the price of $10,000.00 for which Derwacter executed his notes. This sale was ratified and confirmed by the Federal Court. After his discharge in bankruptcy, and being then the owner of this Ann Street property and certain other real estate situate in, and near to, the City of Parkersburg, he, on the 4th day of March, 1899, conveyed all of it to the defendant, B. F. Stewart, reciting in the deed a consideration of $4,500.00. This deed on its face appears to be absolute and to have been made two days after Mitchell, trustee, had reconveyed the property to Buckley.

The bill alleges that this deed was made with fraudulent intent. The answers of Buckley and Stewart both deny the fraud; and Stewart alleges in his answer that it was for "a consideration of $4,500 every cent of which he had obligated himself to pay." He further says that this sum was raised on notes negotiated in the Citizens National Bank of Parkersburg and in the Parkersburg National Bank, and that he was bound to pay the same. But he does not allege that he ever paid any part of this $4,500 to the banks. He further says that, so far as J. L. Buckley was concerned, said conveyance was absolute and was without reserve; but that at, or about, the time of the conveyance respondent did agree with Cora L. Buckley, who was the wife of J. L. Buckley, that if she would pay said $4,500 within two years he "would sell and convey said lands to her." But he admits, in his answer, that "he regarded himself only as a mortgagee as to Cora L. Buckley, with right of redemption, or right to purchase, in her." He alleges that these notes in bank were renewed from time to time, and the discount paid, and that the entire amount was finally and actually paid by somebody; but he does not say by whom it was paid; and says that he supposed, upon information, that it was paid by Cora L. Buckley.

On the 7th day of May, 1901, B. F. Stewart and his wife, J. L. Buckley and his wife conveyed by joint deed to George H. Textor "the Walker District Property," which was a part of the land previously conveyed by Buckley to Stewart. This deed has the following clause: "The deed from said Buckley to said Stewart on its face is an absolute deed but as a matter of fact it is only a deed of trust to secure B. F. Stewart the payment of certain notes and said Stewart together with his wife joins herein for the purpose of granting and releasing to the said Textor all his interest in said real estate." Who was the maker of these notes? Stewart does not say. Mrs. Cora L. Buckley does not say they were her notes; nor is it material for the purpose of this suit whether they were Mrs. Cora L. Buckley's notes, or not, unless she supplied the money to pay them, out of her separate estate. But any doubt as to who was the maker of the notes, and as to the real nature of the transaction between J. L. Buckley and Stewart would seem to be cleared by the following allegation in the answer of J. L. Buckley; "that the said Stewart did, by endorsing respondent's notes and by making himself personally responsible, help respondent to raise the said sum of $4,500, and in consideration of said $4,500, so provided and raised through the *assistance* of the said B. F. Stewart, this respondent and his wife did make, execute and deliver to the said Stewart, an absolute *bona fide* conveyance of the said three parcels of property in the bill mentioned, on the 4th day of March, 1899, said conveyance was absolute and final as to this respondent. The same was for a full and adequate consideration, and was required by said Stewart, to be in fee simple so far as respondent was concerned." It is thus made to appear that the deed from Buckley to Stewart was in fact only a mortgage to indemnify the said Stewart as endorser of J. L. Buckley's notes held and owned by the banks.

On the 16th day of April, 1901, B. F. Stewart and wife conveyed by deed, with special warranty of title, this "Ann Street Property" to Cora L. Buckley, wife of J. L. Buckley, for a stated consideration of $2,500.00. After this a fine dwelling house was erected on this lot and is occupied by J. L. Buckley and wife, and by H. M. Patton and wife. The other real estate conveyed by Buckley to Stewart was reconveyed by Stewart and his wife to Mrs. Cora L. Buckley, or was conveyed by Cora L.

Buckley and husband and B. F. Stewart and wife, by joint deed, to other persons, and is not involved in this suit.

Cora L. Buckley and J. L. Buckley, her husband, on the 3rd day of March, 1902, conveyed to H. M. Patton an undivided one-half interest in the Ann Street property, reciting a consideration of $4,250.00. Within two weeks after the last named conveyance, the said Patton married Laura Buckley, the daughter of his grantors, and almost immediately, to-wit, on the 14th day of March, 1902, Patton conveyed said half interest directly to his wife, Laura B. Patton. On June 4th, 1902, Laura B. Patton and her husband conveyed this same half interest to Douglas Miller, of Otsego County, New York, reciting a consideration of $5,000.00. The said Douglas Miller by deed which bears date on March 21, 1903, reconveyed this one-half interest to Laura B. Patton.

So that, by these various conveyances we find Cora L. Buckley and her daughter Laura B. Patton invested with the title to this Ann Street property, and residing upon it in a fine dwelling house erected thereon after the conveyance from Stewart to Cora L. Buckley, on April 16, 1901. L. Dudley and W. H. Wolfe, two of the four sureties of Buckley who paid the debt to the Board of Education, filed their bill October, 1903, against J. L. Buckley, Cora L. Buckley, H. M. Patton and Laura B. Patton and B. F. Stewart, attacking the aforesaid conveyances. At the time of filing the original bill only three of the sureties, to-wit, these two plaintiffs and W. Vrooman, had contributed to the payment of said judgment. But while the bill was pending they sought and obtained, contribution from the estate of A. A. McDougle, deceased, one of their co-sureties. They thereupon, at the November rules, 1906, filed their amended bill, making the administratrix of the estate of A. A. McDougle a party, and amending the bill in other particulars.

Answers to the amended bill were filed by J. L. Buckley, Cora L. Buckley, B. F. Stewart, H. M. Patton and Laura B. Patton, his wife, denying all charges of fraud concerning the said several conveyances, and denying any intention, or knowledge, of fraud. No depositions were taken by, or on behalf of, any of the defendants; but the depositions of W. E. Stout, W. H. Wolfe, and F. P. Moats were taken on behalf of the plaintiffs. The cause came on to be finally heard upon the bill, amended bill, and

exhibits therewith, the aforesaid answers, general replications, thereto, order of publication completed as to non-resident defendants, and the aforesaid depositions, and on the 28th day of September, 1907, a final decree was made, giving a recovery to the plaintiffs and to the two defendants, W. Vrooman and A. A. McDougle's estate, their co-sureties, and setting aside the aforesaid deed from Buckley to Stewart, and also all subsequent deeds, specifically naming them, which operated to invest title to the Ann Street property in Cora L. Buckley and her daughter, Laura B. Patton. The other lots which were also conveyed by Buckley to Stewart, but which passed into the hands of other parties, are not affected by the aforesaid decree and are not now involved in this litigation.

Did the circuit court err in holding the said deeds to be fraudulent, and in setting them aside and ordering a sale of the land?

The following points are assigned as error by counsel for appellants in his brief, viz:

"First: It was error to cancel the conveyances for actual fraud, because the charge was not sustained.

"Second: It was error to cancel the conveyances as voluntary, because the allegations of the bill were insufficient to support such a decree.

"Third: It was error to allege actual fraud, and decree cancellation of the deeds on any other ground. There are three distinct grounds on which deeds may be decreed void as to the creditors, and this distinction must be maintained.

"Fourth: It was error to decree relief as between the co-defendants, in favor of W. Vrooman and the Estate of A. A. McDougle.

"Fifth: It was error to decree a sale without an order of reference.

"Seventh: It was error to decree a sale without proof that the rents of the property would not pay the debts within five years.

"Eighth: It was error to decree a sale of the interest of Laura M. Patton, unless or until the interest of Cora L. Buckley had first been offered for sale and found insufficient."

First, as to the deed made from J. L. Beckley and wife to B. F. Stewart, of date March 4, 1899, by which he conveyed

to Stewart the Ann Street property, the Walker District property and the Williams Court Alley property for the consideration of $4,500, as the deed recites. Was this deed in fact fraudulent? What was the real consideration for this deed? What was its real purpose and object? B. F. Stewart, J. L. Buckley and Mrs. Cora L. Buckley, his wife, admit in their answers that while this deed on its face purports to be an absolute conveyance, yet, it was, in fact, a mortgage. Mr. Stewart says in his answer, that it was given in consideration of notes held by the Citizens National Bank of Parkersburg and by the Parkersburg National Bank. Equity, which regards the substance rather than the form of the instrument, will treat this as a mortgage made for the purpose of indemnifying Stewart as the endorser of these notes for $4,500.00 for the accommodation of J. L. Buckley. Was this not a perfectly legitimate and proper transaction? It was based upon a consideration valuable in law. There is no evidence that in receiving this conveyance Stewart designed to defraud the creditors of Buckley. It is true Stewart knew of Buckley's insolvency; but he was a stranger to him, and there is no evidence that Stewart was to profit by the transaction. He was a mere accommodation endorser. In the absence of evidence to the contrary it may well be supposed that Stewart thought he was thereby assisting Buckley to get the money with which to pay his creditors the amounts fixed by the composition. There is no evidence that Stewart had any knowledge of Buckley's purpose to defeat the claim of the Board of Education, and the deed being for a valuable consideration, Stewart could not be affected with notice of the fraudulent intent of his grantor. Neither is the deed void under section 3100, Code of 1906, inhibiting the making of a preference among the creditors by an insolvent debtor. Because the deed was for a present consideration, and is expressly excepted from the operation of the statute. The recital of a false consideration in the deed is not alone sufficient to brand it as fraudulent. This is only one of the many badges of fraud; and even this is repelled by the explanation of the real transaction. We therefore conclude that the deed from Buckley to Stewart, of date March 4, 1899, was not fraudulent on the part of B. F. Stewart.

Was it error, then, to set it aside? If it was error at all, it was harmless. Because the rights of no one were affected by

its cancellation. As we have before said it was only a mortgage; it was of short duration. It was brought into existence, lived out its allotted time and died; its course was fully run and its object entirely accomplished. It was a corpse when the court proceeded by its decree to take its life. It was then of no more effect than if it had been a trust deed, the purpose of which had been completed, and a release executed, except as to the equity of redemption, with regard to which the fraudulent purpose of J. L. Buckley has its origin, so far as title to the "Ann Street Property" is concerned.

Whose equity was it to redeem? Evidently the equity of redemption belonged to the mortgagor, J. L. Buckley, at the time of making the mortgage. How did the right to redeem pass to Cora L. Buckley? What consideration did she give for this equity? Absolutely nothing, unless she paid the notes in bank on which Stewart was endorser. She has not shown she did this. The purpose of the mortgage was to secure these notes. But Stewart and Buckley and Mrs. Buckley all say that so far as J. L. Buckley was concerned it was an absolute sale by him, but it is already shown to be in fact a mortgage. It could not be both a mortgage and a sale at one and the same time, so that in this respect the answers are self-contradictory. Mrs. Buckley knew of her husband's insolvency, and according to the testimony of W. H. Wolfe expressed a purpose to save all the property she could. J. L. Buckley also stated to witness F. P. Moats, the receiver in Bankruptcy, as follows: "I have arranged matters so that I will still have something left. Now if you will never say a word about it but will keep it quiet I will tell you what I have done." Whereupon Moats cautioned him that in view of his official position he could not receive any confidential communications and the subject was then dropped. This testimony taken in connection with other circumstances in the case shows that J. L. Buckley and his wife must have had a purpose in common to save all the property they could from the wreck of Mr. Buckley's business failure. So far as concerned the title to this piece of property she occupies no better position than does the wife of an insolvent husband who receives a conveyance for property for a consideration furnished by her husband. She is a grantee without a consideration and occupies no better position as against the rights of these plaintiffs than J. L. Buckley himself would

occupy. The law puts upon her the burden of proving that she paid the consideration out of her own separate estate, this she has neither done nor attempted to do. The answers of the defendants, notwithstanding they are sworn to, have no more effect in law than if they had not been so verified; they stand on no higher dignity than any other answer. It was a very easy matter for Mrs. Buckley to have proven that she paid the notes on which Stewart was endorser, which is, in any view, the only consideration of the conveyance from Stewart and wife to her; and, not having done so, the presumption is that her husband furnished the consideration. This presumption is further strengthened by the fact that these notes are admittedly J. L. Buckley's own notes. The conveyance, therefore, from B. F. Stewart and his wife to Cora L. Buckley, of the Ann Street property, on April 16, 1901, is purely voluntary and, therefore, fraudulent as to these plaintiffs, if for no other reason than that it is voluntary. It is insisted, however, by counsel for appellants that it is not attacked because it is voluntary and that a deed attacked for one reason can not be set aside for another. But by reference to plaintiff's original bill it is seen that these conveyances are attacked because they are void for want of consideration, and that by the amended bill they are attacked on the additional ground that they are made with fraudulent intent; the amended bill makes the original bill a part of it, hence, the two must be read together, and thus read the pleadings justify the setting aside of these conveyances on either ground. There was no error in setting aside this conveyance.

Counsel for appellants argue, that if the deed from Buckley to Stewart, of date March 4, 1899, was not fraudulent, then the deed from Stewart back to Mrs. Cora L. Buckley, even though without valuable consideration, could not be held void as to plaintiffs. Because, as he contends, their rights accrued subsequent thereto. But plaintiffs are subrogated to the rights of the Board of Education, and their rights are co-extensive with the existence of the debt which they paid after it was reduced to judgment. True, the judgment in favor of the Board of Education was not recovered until November, 1902, and was not satisfied until some time after that, by plaintiffs and their co-sureties, Vrooman and McDougle. Consequently, plaintiff's right to sue did not exist at the time of the conveyance from Stewart to

Mrs. Cora L. Buckley. But Buckley's liability to the Board of Education existed at the date of this deed. The record shows that the judgment was for a balance which was found to be in Buckley's hands as late sheriff of Wood county, and, *ex officio,* treasurer of said Board of Education, some years before the conveyance by Buckley himself to Stewart. The Board of Education had a right to sue to have the deed from Stewart and his wife to Cora L. Buckley set aside without waiting to reduce their claim to judgment; but they chose not to do so, and sued the sheriff and his sureties on his official bond in an action at law which was the shortest and apparently the easiest way for it to get its money. But when the sureties paid the judgment, they were subrogated to all the rights and remedies of the judgment creditor, as against their principal. This gave them the right to attack the aforesaid conveyance. Pingrey, in his work on Suretyship & Guaranty, section 152, says: "If the surety has paid the debt of the principal, he may be subrogated to all the securities, liens, equities, rights, remedies and priorities held by the creditor against the principal, and he is entitled to enforce them against the latter in a court of equity, or of equitable jurisdiction." See also Sterns on Suretyship, section 265; Brant on Suretyship, sec. 324; *Leake* v. *Ferguson,* 2 Grat. 419; *Sweet's Admr.* v. *Jeffries,* 48 Mo. 279; *Saint* v. *Ledyard,* 14 Ala. 244; *Kennedy* v. *Pickens,* 3 Ired. Eq. (N. C.) 147; *Hatfield* v. *Merod,* 82 Ill. 113.

It is insisted that there is no allegation in the bill on which proof could be admitted that the debt existed at the time of the fraudulent conveyance. While it is true there is no specific allegation that the debt existed, still the bill alleges that the suit in which judgment was rendered was brought against Buckley and the sureties on his official bond, as sheriff, to recover money collected by him belonging to the Board of Education, and not accounted for. Upon this allegation it was proper to take evidence to show when he was sheriff, and when the debt originated.

Cora L. Buckley being only a voluntary holder, it is not necessary to decide whether she had knowledge of, and participated in, the fraudulent intent of her husband, or not, the rights of plaintiffs being antecedent to her acquisition of title. *Lockhard*

v. *Beckley,* 10 W. Va. 87; *Miller* v. *Gillespie,* 54 W. Va. 450; *Greer* v. *O'Brien,* 36 W. Va. 277; Code 1906, section 3100.

J. L. Buckley being admittedly insolvent, and the conveyance from Stewart to Buckley's wife having been attacked for fraud by Buckley's creditors, the law puts the burden upon his wife of proving by evidence, clear and satisfactory, that the consideration for the conveyance was furnished by her, from her separate estate. This she has not attempted to do. It must, therefore, be presumed that J. L. Buckley paid the notes held by the banks which Stewart had endorsed for his accommodation. There was no other consideration to support the. wife's deed; none other is claimed by appellants' counsel. *Rose* v. *Brown,* 11 W. Va. 122; *McMasters* v. *Edgar,* 22 W. Va. 673; *Stockdale* v. *Harris,* 23 W. Va. 499; *Walker's Admx.* v. *Peck,* 39 W. Va. 325; *Harr* v. *Shaffer,* 52 W. Va. 207. This rule of law placing the burden upon the wife in such cases is sometimes thought to be a hardship. But when it is considered how easy a matter it is for persons whose relations are as intimate as are those of husband and wife, parent and child, or members of the same family, to falsify such transactions, and evade detection; and on the other hand, how easy it is for the grantee, having possession of all the facts and circumstances, to prove the real consideration, it is readily seen that, while this requirement is a departure from the general rule of evidence requiring proof of facts to be furnished by him who alleges them, the wisdom and justice of the departure is apparent. The rule works no hardship. Why was not the court furnished with some proof on this question of such vital importance to appellants? They can answer; we can not. No one of them testified in the case. The presumption, therefore, is that if their testimony had been given it would have been against their contention. *Knight* v. *Capito,* 23 W. Va. 639; *Hefflebower* v. *Detrick,* 27 W. Va. 16; *Bindley* v. *Martin,* 28 W. Va. 773; *Union Trust Co.* v. *McClellan,* 40 W. Va. 405; *Dewing* v. *Hutton,* 48. W. Va. 576; *Garber* v. *Blatchley,* 51 W. Va. 147; *Vandervorl* v. *Fouse,* 52 W. Va. 214.

Stewart, Buckley and Mrs. Buckley all claim that the deed from Buckley to Stewart was a straight out sale to Stewart, so far as J. L. Buckley was concerned, and that there was an agreement between Stewart and Mrs. Buckley to "sell and convey" this property back to her, upon the payment of these bank notes.

But this contention is wholly inconsistent with the other contention set up by Stewart, that it was only a mortgage. There could have been no sale by Stewart to Cora L. Buckley of this property, if he was only a mortgagee. He had nothing to sell. Neither could he displace the equity of redemption which belonged to the original owner, J. L. Buckley, and invest title in the wife in fraud of the rights of the husband's creditors. Stewart only held title to the property upon trust, and as soon as the notes on which Stewart was endorser were paid, all his interest in the property ceased. The equity of redemption never passed out of J. L. Buckley by the mortgage to Stewart, but remained in him, and was as much subject to the payment of his debts as the entire estate in the land would have been, if no conveyance whatever had been made by him. The attempt, therefore, to invest title to this property in Mrs. Cora L. Buckley by a conveyance from Stewart to her, without any consideration, is a fraud upon the rights of these plaintiffs whose rights, by subrogation, existed at the time of, and even long before, the said conveyance. The court did not err in holding the property liable, in the hands of Mrs. Cora L. Buckley, to the payment of this judgment.

This brings us to consider whether, or not, the deed made on March 3, 1902, by Cora L. Buckley and J. L. Buckley, her husband, to H. M. Patton for one-half interest in the property, is also fraudulent, as to plaintiff's claim. The deed to him recites a consideration of $4,250.00. The bill alleges that it was made with intent to defraud the creditors of J. L. Buckley, and especially to defraud these plaintiffs; also, that the consideration of $4,250 was never paid by him; that this conveyance was only in furtherance of the fraudulent scheme of J. L. Buckley to invest title to said property in his wife and daughter, Laura B. Patton. The bill also alleges that said H. M. Patton was insolvent at the time said conveyance was made to him.

Patton and his wife filed a joint answer in which they deny the charge of fraud, and allege that a full and adequate consideration was paid by H. M. Patton; they also deny any knowledge of fraud on the part of J. L. Buckley. They also allege that in the early part of the year, 1901, said H. M. Patton entered into an agreement with Cora L. Buckley to buy an undivided half interest in said 13th Street, or "Ann Street Property," and to

bear half the expense of erecting thereon a double dwelling house, one part of the same being designed as a home for said Cora L. Buckley, and the other part as a home for respondents, who were at that time about to be married. The consideration to be paid for this one-half interest is not alleged, neither is it alleged whether or not this agreement was in writing; but it is alleged that $1,500 in cash was paid by H. M. Patton when B. F. Stewart made the deed to Cora L. Buckley, and about the same time said Cora L. Buckley made the deed to said H. M. Pattton. They allege that soon afterwards, when the house was to be paid for, which had been erected upon the lot, he paid nearly $2,400 more, in cash, to the contractor, and paid about $400 on account of the plumbing, and $125 more on account of other furnishings. But this answer nowhere denies the allegations of the bill that at that time the said H. M. Patton was insolvent. The answer admits that in the early part of the year, 1901, and at the time of the alleged agreement between said H. M. Patton and Cora L. Buckley for the purchase of said one-half interest, he and Laura Buckley, then Laura B. Patton, were about to be married. Within a few days after receiving the deed, to-wit, on March 14, 1902, H. M. Patton conveyed this one-half interest in the property to his wife, Laura B. Patton, who was the daughter of J. L. Buckley and Cora L. Buckley. This conveyance, he admits, was purely voluntary.

H. M. Patton furnishes no proof whatever to show that he paid any consideration whatever for said one-half interest. He fails to deny the charge of his insolvency, and this allegation of the bill, therefore, must be taken as true. He was admittedly an intimate friend of the family; was engaged to be married to the daughter of J. L. Buckley and Cora L. Buckley, as early as the early part of the year 1901. The date of their marriage does not appear. They were evidently married, however, before March 14, 1902, because that is the date of the deed to his wife. We think these facts and circumstances show such intimate relationship between him and the Buckley family, as would bring him under the rule respecting the burden of proof, and would require him to furnish satisfactory proof of the *bona fides* of the transaction, and that he did, in fact, pay a valuable consideration for the property. Especially ought this rule to apply when it appears that at this time he was insolvent, and that, within a

few days after receiving the deed, he made a direct conveyance
to his wife, which conveyance he admits was purely voluntary.
But he did not testify; nor has he, in any other manner, fur-
nished the court with any evidence to relieve this transaction
from the strong presumption of fraud that arises from the con-
ditions, and surroundings, and relationship before referred to.
Consequently, we must hold that this conveyance was only in
furtherance of the general scheme, or plan, of J. L. Buckley to
invest title to this property in his wife and daughter, and to get
it out of the way of the debt he owed the Board of Education.

The fraudulent purpose of J. L. Buckley, we think, is well es-
tablished by facts and circumstances proven in the case.  For
instance, it appears that in filing a schedule of his assets in
the bankrupt court he omitted to mention a considerable amount
of his property, and that F. P. Moats was appointed a receiver
of the Federal Court to ascertain, and take charge of, such prop-
erty as he had not listed.  The list of such property filed by
Moats, while it does not show the value, shows that it consisted
of valuable household furniture, cut glass and silverware, beds,
bedding, &c., also notes amounting to hundreds of dollars.  But
the schedule of property filed by the said J. L. Buckley, and veri-
fied by his affidavit, shows his only assets to be the stock of goods
in store, valued at $8,600; personal effects to the value of $50,
and the real estate which he himself had conveyed to J. H. Mitch-
ell, trustee, and which was afterwards reconveyed to him by order
of the bankrupt court, after the composition had been effected
with his creditors.  It further appears from the testimony of W.
H. Wolfe, Sr., that his house was elegantly furnished, a good deal
of the furniture being upholstered.  It also appears that J. L.
Buckley claimed to have assigned a number of notes and accounts
to one D. E. Leach.  It is very doubtful, indeed, whether or not
this was a genuine assignment.  Because it appears from the
testimony of W. H. Wolfe, Sr., one of the plaintiffs, that Leach
owned little, or no, property and that he was a relative of Mrs.
Cora L. Buckley.  The testimony of F. P. Moats proves that
J. L. Buckley brought suit on a number of these claims against
the debtors, in his own name.  There was one note, known as
the "Nellie Cook" note, which amounted, with its interest, to
nearly as much as the judgment obtained by the Board of Edu-
cation.  This note had been placed in the hands of Mr. S. T.

Stapleton, secretary of the Board of Education, as collateral to secure the amount which Buckley, as sheriff owed it. This note was in the hands of the secretary of the Board of Education at the time Moats was appointed receiver. Moats says that about the time he was appointed special receiver in the bankruptcy proceeding Mr. Stapleton was also appointed referee, and that Mr. Stapleton brought to him this "Nellie Cook" note and turned it over to him, with the statement that the Board of Education did not claim it. Moats further says, that this note was in his hands for sometime, but how long he held it he does not know, and that he thinks he turned it over to Mr. J. L. Buckley as agent of Mr. Leach and that he knows this note was paid by Mr. C. T. Caldwell, or by some one for him, to Mr. Buckley; that Mr. Buckley himself afterwards informed him of this fact. This testimony, taken in connection with other circumstances in this case, establishes the fact that J. L. Buckley was trying to save, and to put out of the reach of his creditors, as much of his property as he could. And there would seem to be little room for doubt that he did in fact manage to save a great deal of it. It is more than probable that he saved enough to build the house on the vacant lot on Ann Street, after procuring the deed therefor to be made by B. F. Stewart and his wife to Mrs. Cora L. Buckley.

It is admitted that the deeds made by H. M. Patton to his wife, Laura B. Patton, by H. M. Patton and his wife to Douglas Miller, and by Douglas Miller back to Laura B. Patton, for the one-half interest in said property, were purely voluntary, and that the two last mentioned deeds were made simply for the purpose of investing legal title in Laura B. Patton, and to effectuate the purpose intended by the deed made by Patton directly to his wife. The conveyance from Stewart and wife to Mrs. Buckley having been made in fraud of plaintiffs' rights, the fraud affects the property in the hands of her daughter, Mrs. Patton. All mediate conveyances of the one-half interest in the lot in question, from Stewart's deed to Mrs. Buckley down to the vesting of title in Mrs. Patton, are purely voluntary, and necessarily tainted with the fraud. No subsequent conveyance, which is purely voluntary, can place the property out of the reach of Buckley's creditors whose debts existed at the inception of the fraud. Equity prefers the right of a creditor to those of

a voluntary grantee, however innocent he may be of actual fraudulent intent, and without regard to whether such voluntary grantee holds mediately, or immediately, from the fraudulent grantor, provided that no innocent purchaser for value has intervened in the chain of title. *Bank* v. *Wilfong,* 66 W. Va. 470; *Snoddy* v. *Haskins,* 12 Grat. 363; Bump on Fraudulent Conveyances, section 239. We are of opinion that the lower court committed no error in setting aside the deed made by B. F. Stewart and his wife to Cora L. Buckley on the 16th day of April, 1901, and all subsequent deeds in Laura B. Patton's chain of title to the one undivided half of the Ann Street property. This disposes of the first three questions raised in appellants' assignment of errors.

Fourth. Was it error to decree relief in favor of W. Vrooman and the estate of A. A. McDougle, two of the four sureties who had paid an equal proportion of the aforesaid judgment? Vrooman and McDougle's administratrix did not join in the suit with the plaintiffs, but were made co-defendants. Vrooman demurred to the bill, but did not answer. McDougle's administratrix made no appearance. There are numerous authorities holding that relief may be granted to a co-defendant upon a case made out by the evidence and the pleadings between plaintiff and defendant. We have many decisions of our own on this point. *Vance* v. *Evans,* 11 W. Va. 342; *Ruffner, Donnally & Co.* v. *Hewitt-Kerchival Co.,* 14 W. Va. 738; *Worthington* v. *Staunton,* 16 W. Va. 208; *Roots* v. *Salt Co.,* 27 W. Va. 483; *McKay* v. *McKay,* 33 W. Va. 724; *Dudley* v. *Barrett,* 66 W. Va. 363; and 1 Hogg's Eq. Pro., section 578. But proof only of such co-defendant's right to the relief is not sufficient. There must be both pleadings and proof in order to entitle him to relief. An examination of the above cases will show either that the prayer of the plaintiff's bill was made on behalf of the co-defendant, as well as for himself, or that the co-defendant answered and prayed for relief. In the present case the prayer of the bill is that the deeds "be set aside as fraudulent and void so far as the rights and interests of these plaintiffs are concerned." The prayer for general relief is also on behalf of plaintiffs only. The prayer is an essential part of the pleading; so much so, that in case a complainant omits to add a prayer for general relief, and mistakes the relief to which he is entitled

in his specific prayer, no relief whatever can be granted. *Goff* v. *Price,* 42 W. Va. 385; 1 Bart. Ch. Pr. (2nd Ed.), section 89; 1 Hogg's Eq. Pro., section 105; 1 Beach Mod; Eq. Pr., sections 87-91. We are, therefore, of opinion that there was no pleading between plaintiffs and the defendant Buckley on which the court could properly give relief to the co-defendants Vrooman and McDougle's administratrix, and that it was error to do so.

Fifth. Was it error to decree a sale without referring the case to a commissioner, to ascertain the liens and priorities?

Plaintiffs in their amended bill pray for a reference; but they have a right to abandon this part of their prayer, unless the law makes a reference indispensable. There are only two liens mentioned in this bill, the one in favor of these plaintiffs, which bears date November, 1902; the other, the judgment in favor of the First National Bank of Parkersburg against J. L. Buckley and W. McCosh, rendered by a justice of the peace on January 20, 1903. This judgment was paid by McCosh who was the endorser for Buckley, and he took from the bank an assignment of the judgment. He was afterwards adjudged insane and Wirt N. Kellar was appointed his committee. Kellar is a party to the bill, but he makes no appearance. The McCosh debt is separate and distinct from the debt of plaintiffs. It is also subsequent in date. His committee has not appealed from the decree of the circuit court of Wood county; and we fail to see how appellants are prejudiced by a failure to refer the case to a commissioner. *Hardy* v. *Scott,* 26 W. Va. 710; *Miller* v. *Rose,* 21 W. Va. 291; *Clark* v. *Johnston,* 15 W. Va. 804; *Kimble* v. *Wotring,* 48 W. Va. 412; *Core* v. *Cunningham,* 27 W. Va. 206; *Colston* v. *Miller,* 55 W. Va. 490.

It was not necessary to refer the case to a commissioner to state accounts on these two judgments; the court could easily do that itself; and it does not appear that there are any other liens on the property than these two mentioned in the bill. *Weinberg* v. *Rempe, el al.,* 15 W. Va. 829. In one sense this suit might be regarded as a bill to enforce judgment liens; yet in a larger, and more important sense, it is a bill attacking fraudulent conveyances, and seeking satisfaction out of the debtor's property conveyed to another before the lien of the judgment attached. It was not necessary that judgment should have been rendered before plaintiffs would have had a right to

attack the fraudulent conveyance, provided they had paid the debt of their principal. But Buckley denied his liability to the Board of Education, and the sureties were not safe in paying the debt until their principal had made his defense, and the amount of his liability definitely fixed by a judgment of the court. But immediately upon paying the judgment, the sureties who paid it were subrogated to all the rights and remedies of the Board of Education against the principal debtor, and could pursue him in any manner that the creditor itself could have pursued him, which included the right to attack the conveyance made in fraud of its rights before the judgment was rendered.

"Seventh." It is alleged that it was error to decree a sale without proof that the rents and profits of the property would not in five years pay the debt. This is a bill attacking a fraudulent conveyance, and it was not necessary to ascertain whether or not the debt would be paid in five years, by a rental of the property before decreeing sale. This is well established by numerous decisions of this Court. *McMasters* v. *Edgar*, 22 W. Va. 673; *Core* v. *Cunningham*, 27 W. Va. 206; *Burt* v. *Timmons*, 29 W. Va. 441; *Reynolds, Admr.* v. *Gawthrop's Heirs*, 37 W. Va. 3; *Colston* v. *Miller*, 55 W. Va. 490; *State* v. *Bowen*, 38 W. Va. 91.

"Eighth" Was it error to decree a sale of Mrs. Laura B. Patton's half interest in the property along with that of Mrs. Cora L. Buckley? It is a rule of equity, in the enforcement of liens against land in the hands of alienees of the judgment debtor, which alienees acquired title at different times, to first exhaust the land, if any, remaining in the hands of the judgment detor before proceeding against the lands of any of the alienees, and in the event it is necessary to subject any of their lands to the satisfaction of the lien, it must be done in the inverse order of the alienation, thus making the burden fall first upon those who stand nearest, in the time of receiving their conveyance, to the alienor.

But this rule has no application to alienees who hold their title by fraudulent conveyances; or to voluntary holders under fraudulent grantors. Such persons occupy no better position in respect to the rights of the creditors of the fraudulent grantor than the fraudulent grantor himself occupies.

Mrs. Laura B. Patton is a voluntary grantee; she has no superior rights, as against plaintiffs, to her husband, H. M. Patton; and he had no superior rights to those of Mrs. Cora L. Buckley who was the grantee of the equity of redemption from B. F. Stewart for a consideration furnished altogether by her husband. Consequently, under the circumstances of this case, neither Mrs. Laura B. Patton nor Mrs. Cora L. Buckley have any greater right, as against these plaintiffs, than J. L. Buckley himself would have had if he had been the holder of the title at the time of the decree complained of. Mrs. Laura B. Patton stands on no better foundation than her mother, Mrs. Cora L. Buckley, and can claim no superior equity, and her interest is equally liable with that of her mother. Moore on Fraudulent Conveyances, Vol. 2, page 209; *Watson* v. *Dickens,* 29 Miss. 608; *Goshorn* v. *Snodgrass,* 17 W. Va. 717; *Lockhard* v. *Beckley,* 10 W. Va. 87.

In so far as the decree complained of gives relief to the co-defendants Vrooman and the McDougle estate, it is erroneous and will be reversed. In all other respects it will be affirmed, with costs in favor of appellants against Vrooman and McDougle's administratrix. Notwithstanding these parties did not answer in the court below they have filed briefs in this Court contesting the rights of appellants. This makes them liable for costs.

The cause will be remanded for further proceedings.

.        *Affirmed in Part.    Reversed in Part.    Remanded.*