VIRGIE KERTESZ

*v.*

QUINTO FALGIANO

(No. 10662)

Submitted September 14, 1954. Decided November 23, 1954.

470

*Bailey, Worrell & Bailey, R. D. Bailey,* for appellant.

*Sherman H. Ballard, W. H. Ballard, II., I. Mann Litz,* for appellee.

RILEY, JUDGE:

In this suit in equity instituted in the Circuit Court of McDowell County by Virgie Kertesz, plaintiff, against Quinto Falgiano, defendant, plaintiff filed a bill of complaint labelled "Bill of Complaint for Injunction", alleging that the plaintiff is the owner in fee simple of a certain Lot No. _____, in the City of War, McDowell County, West Virginia, which is more particularly, and erroneously, described in the bill of complaint as "Lot No. 33 (Thirty-three), in the Beavers addition to the town of Miners City (now known as War), in McDowell County, West Virginia, facing on the right of [way of] N. & W. Railway Company, a distance of thirty (30) feet, and running back between parallel lines a distance of One Hundred, (100) feet", and the two other numbered lots, plaintiff's ownership of or interest therein not being pertinent to the controversy involved in this proceeding. In this bill of complaint the plaintiff alleges the existence of an alleyway twenty feet wide running between plaintiff's property and that of the adjacent landowner, the defendant, Quinto Falgiano, which has been in use as a public way for thirty-seven years; that plaintiff's line adjoins the alleyway; that defendant has a fence defining the extent of his real estate separate and apart from the alleyway, which has been in use for thirty-seven years and so recognized by the property owners of the City of War, McDowell County; that on May 13, 1951, during the nighttime defendant wrongfully, maliciously and without permission therefor erected a barricade of rock and stone across the alleyway, thus

depriving plaintiff of the use thereof; and that in connection with the alleyway the plaintiff owns a number of houses at the end or at the rear of the alleyway, which alleyway provides a means for the tenants occupying the houses for transferring coal, groceries, furniture, goods and chattels to the houses so occupied by them from the public street, which connects with the alleyway and the highway adjacent thereto, to plaintiff's property in the rear and to the place of business owned and operated by the plaintiff. In this original bill of complaint the plaintiff prays, *inter alia,* that the court decree that the defendant does not own the land upon which he allegedly illegally erected the barricade; that he has no right to the land upon which the barricade has been erected; that the court decree that the barricade be taken down and removed from the place where it was placed in the alleyway; and that the court decree that the plaintiff has the right to have the barricade so erected upon the alleyway by the defendant taken down and removed. Further the bill of complaint prays that the circuit court order an issue out of chancery for the purpose of ascertaining the damages, if any, which the plaintiff has suffered by the defendant's erection of the barricade, thus preventing the use of the alleyway, and that plaintiff may have general relief.

To a final decree entered on July 15, 1953, this appeal is prosecuted, by which the circuit court decreed in the following details: (1) The court refused to grant unto the plaintiff an injunction, requiring defendant to remove the barricade or fence described in the bill of complaint and in plaintiff's amended bill of complaint, for the reason that the fence or barricade is situated and erected on the lot or parcel of land owned by the defendant, to-wit, Lot No. 20, Block 2, Beavers Second Addition to War (formerly known as Miners City); (2) that there is no strip or parcel of land, alleyway, or walkway across defendant's Lot No. 20, Block 2, Beavers Second Addition to the Town of War, as alleged in plaintiff's bill of complaint, amended bill of complaint, and amended and supplemental bill of complaint; (3) that the plaintiff, Virgie Kertesz, has not ac-

quired the strip of land across defendant's Lot No. 20 by prescription; (4) that the plaintiff has not acquired title to the strip of land alleged in plaintiff's pleadings across defendant's Lot No. 20 by adverse possession; and (5) that the true and correct division line between defendant's Lot No. 20 and plaintiff's Lot No. 21 (which latter the record discloses is the correct designation of plaintiff's property which adjoins that of defendant) is as shown by the "red pencil line" on a map prepared by defendant's witness, E. C. Zick, purporting to show Block 2 of Beavers Addition to the Town of War, filed with the record as "Defendant's Exhibit No. 7", which "red pencil line" marked on the exhibit in red crayon the court decreed "is the true division line that divides said Lot No. 21 owned by the plaintiff and Lot No. 20 owned by the defendant."

Following the filing of the original bill of complaint, a number of pleadings were filed, accompanied by many exhibits, throughout which both plaintiff and defendant, and in particular the plaintiff, assumed a variety of positions, and after a change in plaintiff's counsel, the evidence adduced on behalf of plaintiff materially differed from that originally offered by plaintiff's prior counsel.

As there arises in this case the initial and pivotal question whether this case is properly in a court of equity, or whether plaintiff's claim should initially have been asserted in a court of law, it becomes necessary for this Court to determine whether the decree of the trial court entered as a decree in equity was within the jurisdiction of the circuit court, acting as a court of equity.

At the risk of making this opinion prolix, this Court has no other course in determining the jurisdictional question but to consider somewhat in detail the many pleadings filed by both the plaintiff and the defendant, the scope of which is variegated, together with so much of the evidence as bears on the question whether this suit was properly cognizable in a court of equity.

To the plaintiff's original bill of complaint, the defendant, Quinto Falgiano, filed an answer. From the allegations of the answer itself, defendant charges that the

plaintiff is the owner of Lot No. 21, Block 2, Beavers Addition to Miners City, now the Town of War, filed as defendant's exhibit "G", which lot was conveyed to plaintiff by Walter Hudler and Bessie Hudler, his wife, by a deed, a copy of which is filed with the answer as defendant's exhibit "B", dated June 5, 1944, and recorded in the office of the Clerk of the County Court of McDowell County, which deed describes Lot No. 21 of Block 2 of Beavers Addition to the Town of War by metes and bounds in the following language: "Beginning at a point at the Northeastern corner of Lot No. 21, of Block No. 2 of said Beavers Addition to said Town of War and adjoining Lot No. 22, sold by A. D. Beavers to W. S. Bolding and in line of the right of way of the Norfolk and Western Railway Company, thence with line of said right of way, a distance of 30 feet to a point, and being the corner of Lot No. 20, thence with Lot No. 20, and being the west side of Lot No. 21, running back to edge of Dry Fork River a distance of 150 feet, more or less, thence with said river in an easterly direction a distance of 30 feet to the back corner of Lot No. 22, thence with said Lot No. 22, a distance of 150 feet, more or less, to the beginning; Being known as Lot No. 21, in Block No. 2, of Beavers Addition to the Town of War, * * *."

Likewise the answer alleges and the exhibits to the answer identified as defendant's exhibits "D" and "E" tend to show that the defendant is the owner of Lots Nos. 19 and 20 of Block 2 in Beavers Addition to Miners City, now known as the Town of War. The description of lots numbered 19 and 20 in Block 2, Beavers Addition, alleged to have been conveyed to the defendant, Quinto Falgiano, named in the deed dated July 23, 1919, and filed as defendant's exhibit "D", as "Quindo" Falgiano, by Fillippo Falgiano, unmarried, is all of grantor's "right, title and interest in and to * * * Lot numbers Nineteen (19) and Twenty (20) in block two (2) of the Beavers Addition to the town of Miners City, McDowell County, West Virginia, of record in the office of the Clerk of the County Court of McDowell County, in Deed Book No. 78, page 366."

Defendant's answer to plaintiff's original bill of complaint categorically denies that there is any alleyway laid out or down on the map and plat of Miners City Addition, which is the only map or plat of record in the office of the Clerk of the County Court of McDowell County and filed in evidence in this case, upon which are shown Lots Nos. 19 and 20 described in the deed, dated July 23, 1919, from Fillippo Falgiano to the defendant, Quinto Falgiano, and Lot No. 21, Block 2 of Beavers Addition to the Town of War, described in the deed dated June 5, 1944, from Walter Hudler and Bessie Hudler, his wife, to the plaintiff, Virgie Kertesz.

Further the defendant's answer to plaintiff's original bill of complaint denies that there are any physical markings or other evidence on the ground showing the alleyway alleged in plaintiff's original bill of complaint, from which it could be established, as a matter of law, that such alleyway existed, as alleged in the original bill of complaint.

Thus for the first time from the pleadings filed in this suit are Lot No. 21, the ownership of which is alleged to be in the plaintiff, Virgie Kertesz, and Lots Nos. 19 and 20, the ownership of which is alleged to be in the defendant, Quinto Falgiano, properly designated by lot numbers. It is, however, to be noted that in defendant's answer to the original bill of complaint it is alleged that the plaintiff is the owner of Lot No. 21 and the defendant is the owner of Lots Nos. 19 and 20, and on the basis of claiming affirmative relief the answer places in dispute the line dividing plaintiff's Lot No. 21 and defendant's Lot No. 20.

With defendant's answer to the original bill of complaint many plats showing, or purporting to show, the whole, or a part of Block No. 2 of Beavers Addition to the Town of War, are filed, which show, *inter alia*, defendant's alleged Lots Nos. 19 and 20, plaintiff's alleged Lot No. 21, and Lots Nos. 22 and 23 immediately east and adjoining Lot No. 21, including a photostatic copy of the only recorded map, that is the map of Miners City Addition, which is filed as "Defendant's Exhibit 'G' ", to defendant's answer, and is the only map according to which the

parties plaintiff and defendant acquired their respective titles to the properties which they claim.

On January 18, 1952, plaintiff filed an amended bill of complaint which corrected the lot numbers set out in plaintiff's original bill of complaint by alleging that plaintiff is the owner of Lot No. 21 and that defendant is the owner of Lots Nos. 19 and 20, Block 2, Beavers Addition to the Town of War. In this amended bill of complaint the plaintiff "submits" that the defendant has instituted a suit in the Circuit Court of McDowell County, in which by taking a nonsuit therein the plaintiff did not give the circuit court the opportunity to ascertain the true ownership of the alleyway; that the defendant by his failure to prosecute the prior suit has forfeited his rights; and, finally, that the circuit court is not required to fix the metes and bounds of Lots Nos. 20 and 21, but to determine "whether or not the Statute of Limitations have run against the ownership of the same, and to determine whether or not the defendant constructed his barricade in the alley-way of the City of War, McDowell County, West Virginia, over which the said defendant has no right to obstruct."

This amended bill of complaint is unorthodox in that it contains no prayer for general or special relief. At this point we note that no decree can be rendered for a plaintiff unless his bill of complaint contains a prayer for relief, either general or special, or both. *Martin* v. *Kester*, 46 W. Va. 438, pt. 3 syl., 33 S. E. 238; 1 Miller Hogg's Equity Procedure, 3d ed., Section 113. In point 12 of the syllabus of *Dudley* v. *Buckley*, 68 W. Va. 630, 70 S. E. 376, this Court held that: "Notwithstanding the rights of a co-defendant are clearly established by the proof taken on the pleadings between plaintiff and defendant, still no relief can be granted such co-defendant, unless relief for him is included in the prayer of plaintiff's bill, or unless he has himself answered and prayed for relief."

On March 28, 1952, the defendant filed an answer to plaintiff's amended bill of complaint, in which the defendant denied the allegations of paragraph No. 2 of the amend-

ed bill of complaint, which assert that during the last thirty-seven years the property owners have erected a fence enclosing the property in such manner that an alley has been left open and has become a public alleyway of the City of War. The answer further alleges that the plaintiff has been the owner of Lot No. 21 of Block 2 of Beavers Addition to the Town of Miners City by virtue of the deed from Walter Hudler and wife to plaintiff, dated June 5, 1944, and that as shown by defendant's exhibit No. 1 to the answer to plaintiff's amended bill of complaint, Lot No. 21 has been charged to plaintiff for tax purposes and taxes paid by plaintiff, and that "any right or interest that the plaintiff may have had [to the alleyway] were lost or forfeited by reason of the non-entry of said strip of land for taxation purposes on the land books of said County, at any time, in the name of Vergie Kertesz; that entry for taxation purposes could not have been made because there was no Deed of Conveyance upon which to base an entry in the Land Books of said County, by reason of Section C, Article XIII, [evidently meaning Section 6, Article XIII] of the Constitution of West Virginia."

The answer denies all of the allegations of the amended bill of complaint in reference to the existence of an alleyway, and alleges that there was never an alleyway left open as alleged in the amended bill of complaint, and denies that any statute of limitations has application in this suit. Finally, the answer to the amended bill of complaint prays: (1) That the circuit court fix the true boundary line dividing Lots Nos. 20 and 21, Block 2, Beavers Addition to the Town of War, as appears from the recorded plat, exhibit "G" with defendant's answer; (2) that the court decree that there is no alleyway, walkway or passageway across defendant's Lot No. 20, as contended by the plaintiff; (3) that the court decree that plaintiff be required to remove from Lot No. 20, Block 2, Beavers Addition, all buildings and other structures which she has built or constructed thereon; and (4) that defendant be granted general relief.

Evidence having been introduced on behalf of both plaintiff and defendant upon the issues made upon the original bill of complaint, defendant's answer thereto, plaintiff's amended bill of complaint, and defendant's answer to the amended bill of complaint, the taking of which evidence was concluded on March 28, 1952, both sides rested and submitted the case to the court, and the Honorable Sidney L. Christie, the special judge selected by agreement of counsel, entered of record on January 15, 1952, by order of the then presiding special judge, the Honorable B. F. Howard, addressed to Messrs. Capehart, Miller and Capehart, plaintiff's attorneys, and I. Mann Litz, Esq., defendant's attorney, a letter, dated June 24, 1952, in which the special judge, Christie, announced his conclusions, which may be summarized as follows: (1) The evidence fails to establish a dedication by the Town of War, or other public authority, of an alleyway from McDowell Street toward or to Dry Fork River, or that any such alleyway is provided for on any of the maps or deeds pertaining to the properties owned by the plaintiff and defendant; (2) that though it seems clear from the evidence that while plaintiff's property was owned by plaintiff and her predecessors in title there was a walkway around the house, that is the frame dwelling before it was moved by plaintiff, for the private use of the occupants of the second floor of the frame dwelling house, the entrance to which was in the rear of the building, its use was never more than a "permissive" use granted by the owners and did not establish a private right of way by prescription; (3) that the evidence fails to establish that plaintiff has acquired any enforceable rights in defendant's Lots Nos. 19 and 20 by adverse possession; (4) that the true division line between the plaintiff's and defendant's properties is as shown by the map prepared by E. C. Zick, engineer, filed as "Defendant's Exhibit No. 7", and dated 1949; and (5) that an appropriate decree in conformity with the court's opinion, as contained in the letter of June 24, 1952, may be prepared and presented for entry.

Before a decree carrying into effect the conclusions of

the court had been presented, plaintiff engaged Judge R. D. Bailey as additional counsel in the case, who requested that no further action be taken until he could examine the pleadings and determine whether a motion would be made to reopen the case, which request was granted, and the plaintiff, through Judge Bailey on August 13, 1952, moved the court to reopen the case.

On August 13, 1952, the plaintiff by her original counsel, who at that stage in the progress of the suit was joined by Judge R. D. Bailey and his law firm, filed an amended and supplemental bill of complaint. The gravamen of the allegations thereof is to the effect that plaintiff has lately discovered that "there is a strip, piece or parcel of land, five or six feet in width, extending from the public highway in the town of War to Dry Fork Branch on, along, and by the side of the property of the plaintiff located on Lot No. 21, and that said strip, piece and parcel of land extends along and on part of Lot No. 20 owned by defendant to Dry Fork Branch"; that plaintiff "has been the owner of Lot No. 21 since 1942"; that there is a well marked and defined path extending from the State road, that is McDowell Street, upon which the lots in Block 2 of Beavers Addition to the Town of War front, five or six feet in width, which was in use at the time the plaintiff purchased Lot No. 21, and had been in use for more than thirty years prior to that time; that the piece or parcel of land used as a pathway is approximately one hundred feet in length and has been used by the plaintiff, as well as by any and all other persons who desire to use it in visiting that section of the Town of War; that plaintiff has erected on the front of Lot No. 21, facing the State road, McDowell Street, a building for business purposes which is approximately twenty-eight feet in width and approximately thirty to thirty-five feet in length; that there is a space of about six or eight feet between the building and the apartment building owned by the plaintiff; that on Lot No. 21 there is a well marked fence extending from McDowell Street to Dry Fork Branch; that the only entrance to the apartment house owned by plaintiff is over the heretofore mentioned

strip of land, which the defendant has blocked and obstructed to the corner of her business building located on the front of plaintiff's Lot No. 21, but there are no obstructions from the corner of the business building to Dry Fork Branch; that the obstructions erected by the defendant have blocked the entrance of the plaintiff and her tenants to the apartment building, except through plaintiff's business building, and that it is necessary for the plaintiff in disposing of her "garbage, etc.," to carry the same through her business house to McDowell Street; and that the piece or parcel of land has been used as a passageway for more than thirty years, and no objection was made to such use until the defendant placed the barricade and obstruction across it. The amended and supplemental bill further alleges that it is true that plaintiff and defendant derive their titles to Lots Nos. 20 and 21 from the same source of title, and prays that the defendant be required to answer the amended and supplemental bill of complaint, and that she may have such relief as is prayed for in her original bill of complaint.

To this amended and supplemental bill of complaint the defendant filed an answer, in which he denies all the allegations contained in the third paragraph of the amended bill of complaint, which is the paragraph that alleges that the defendant has forfeited his rights by failure to prosecute the prior suit, brought by the defendant at a time when it was evident that the alleyway was not on defendant's property; and that the map filed with defendant's answer to plaintiff's original bill of complaint, evidently referring to defendant's exhibit "G", being the recorded map of Miners City Addition, cannot be considered conclusive in the face of the open and notorious use of the alleyway, and that the defendant himself has fenced the alleyway, and enclosed the lots leaving the alleyway open; which answer to plaintiff's amended and supplemental bill of complaint further alleges: (1) That there is no strip of land extending from the public highway, that is McDowell Street in the Town of War, to Dry Fork, on or along Lot No. 21 owned by the plaintiff, nor over and on

Lot No. 20 owned by the defendant; (2) that the plaintiff acquired her title to Lot No. 21, Block 2, by a deed dated June 5, 1944, from Bessie Hudler and her husband; (3) that the path referred to in plaintiff's amended and supplemental bill did not exist until the year 1947 or 1948, inasmuch as it was in 1947 or 1948 that plaintiff moved the frame dwelling house (now referred to by plaintiff as an apartment house) about forty feet to the rear of its original location and thereafter erected a brick and cinder block building, both of which the answer alleges encroach on defendant's Lot No. 20, and that before plaintiff moved her frame dwelling house, the only structure on the rear of Lot No. 21 was an outhouse, and that even before the frame house was moved to the rear it encroached on defendant's Lot No. 20, and after its removal it still encroached and now encroaches, approximately ten feet on defendant's Lot No. 20; (4) that neither plaintiff nor defendant knew where the division line between plaintiff's Lot No. 21 and defendant's Lot No. 20 was located until the year 1945; (5) that their predecessors in title never knew the correct location of the division line; (6) that the division line between the said lots was not located by survey until 1945, when it was located by, on behalf of and at the instance of the defendant, and when a survey was made, defendant informed the plaintiff of the location of the division line between the said lots and gave notice to the plaintiff in the year 1945; (7) and that since that time plaintiff and defendant have had many quarrels with respect to the division line and the property, and defendant has continuously objected to the plaintiff using his property and plaintiff should be required to remove her buildings from defendant's property.

Defendant's answer to plaintiff's amended and supplemental bill further alleges a delineation of the title to Lots Nos. 22 and 23, Block 2, Beavers Addition to the Town of War as follows: By deed dated January 16, 1908, A. D. Beavers conveyed the lots to W. S. Bowling; by deed dated October 26, 1908, W. S. Bowling and wife conveyed the lots to War Creek Coal Company, a corporation; by

deed dated December 22, 1942, War Creek Coal Company, a corporation, conveyed Lots Nos. 22 and 23, together with other property, to A. M. Harman, in which conveyance War Creek Coal Company conveyed all real estate owned by it at that time, and Lots Nos. 22 and 23, Block 2, Beavers Addition, were the only lots owned by the coal company in Beavers Addition at that time; by deed dated March 5, 1946, A. M. Harman and wife conveyed to C. S. Brown, R. R. Hopkins and C. L. Brown a parcel of land fronting sixty feet on McDowell Street in the City of War, and extending back between parallel lines to Dry Fork River; that the last-mentioned deed describes the property so conveyed as beginning "at a point on the concrete side walk (situated N. 64 degrees 58 minutes E. 25.25 feet from a copper plug in said side walk) ; thence S. 24 degrees 22 minutes E. 157.0 feet partly with fence separating said Harman's lot and a lot belonging to Beavers to a point in Dry Fork at or near the center line of same; thence N. 47 degrees 27 minutes E. 63. 16 feet up said stream to a point in or near the center line of said stream; thence N. 24 degrees 22 minutes W. 138.0 feet passing over a concrete pier near 1 inch eastward from the southwest top corner of same and over an iron pipe placed in the ground to a point on said concrete side walk; thence S. 64 degrees 58 minutes W. 60.0 feet to the beginning. (The bearings for this survey are taken from a map purporting to be made by H. A. Kiser, and show near 4 degrees 00 minutes west of magnetic north as of November 15, 1945) and being a part of the lands conveyed to A. M. Harman by War Creek Coal Company." The defendant's answer to the amended and supplemental bill of complaint further alleges that the deed from A. M. Harman and wife to C. S. Brown and the other grantees actually conveys a strip of land approximately twelve feet wide, fronting on McDowell Street in the City of War, and extending back between parallel lines to Dry Fork River, which strip is a part of Lot No. 21, Block 2, of Beavers Addition, and actually constitutes a twelve-foot frontage on the easterly portion of Lot No. 21, which Lot No. 21 is the lot owned by the plaintiff; and that

the starting point of the property conveyed by the deed from A. M. Harman and wife to C. S. Brown and the other grantees should have been located 37.25 feet from the copper plug instead of 25.25 feet, as set forth in the deed.

The answer further alleges that in 1946 C. S. Brown and others erected a brick building on the property purchased by them from A. M. Harman and wife, which building now houses the War Motor Sales; that the westerly side of the building actually encroaches approximately twelve feet on plaintiff's Lot No. 21, Block 2, Beavers Addition to the Town of War; and that thereafter in 1947 or 1948 the plaintiff moved the frame dwelling house from the front portion of Lot No. 21 about forty feet to the rear of the lot, and thereupon erected a cinder block and brick building on the front portion thereof, which building is about twenty-eight feet wide; that the easterly side of plaintiff's building is approximately four feet from the westerly side of the building housing War Motor Sales; and that the westerly side of plaintiff's brick and cinder block building encroaches approximately eight feet on the easterly side of Lot No. 20, now owned by the defendant.

It is further alleged in defendant's answer to plaintiff's amended and supplemental bill of complaint that the plaintiff did not have her lot surveyed before she erected the brick and cinder block building on the front portion thereof, but apparently relied upon the location of the War Motor Sales building in determining where to place her building; and that in so doing she encroached approximately eight feet on defendant's Lot No. 20; that she moved the frame dwelling house, which is referred to in her amended and supplemental bill as an apartment building, about forty feet to the rear of its former location, so that it also encroached and still encroaches approximately ten feet on defendant's Lot No. 20; that defendant notified plaintiff before plaintiff erected the cinder block and brick building on the front portion of Lot No. 21 that plaintiff's frame dwelling house encroached on his property, and that the proposed brick and cinder block building would

likewise encroach upon defendant's property; but, never-theless, plaintiff disregarded defendant's warnings and notice, and over defendant's protest moved her frame dwelling further on defendant's Lot No. 20, and also erected her brick and cinder block building on approxi-mately eight feet of defendant's Lot No. 20, and in so doing committed an unlawful trespass on defendant's property.

Defendant's answer to plaintiff's amended and supple-mental bill of complaint further alleges that the alleged walkway referred to in plaintiff's amended and supple-mental bill of complaint is "fictitious, false and imaginary and, further, is the result of the aforesaid unlawful tres-pass, because the said building encroaches approximately 8 feet onto defendant's Lot No. 20 but after said building was erected plaintiff has used, and is now attempting to take from defendant, an additional 20 feet from his said lot so that she may use the same" as a walkway to and entrance for her frame dwelling house, after its removal to the rear of her Lot No. 21 from its former location.

Defendant's answer to plaintiff's amended and supple-mental bill of complaint admits the allegation to the effect that both plaintiff and defendant derived their titles from the same source.

And, finally, defendant's answer to plaintiff's amended and supplemental bill of complaint prays that the said amended and supplemental bill of complaint be dismissed at plaintiff's costs, and for the relief prayed for by defend-ant in his answer heretofore filed to plaintiff's amended bill of complaint, to-wit, that the circuit court fix the true and proper boundary line dividing Lots Nos. 20 and 21, Block 2, Beavers Addition to the Town of War, as the same appears on the map of record, which is commonly called the map or subdivision of Beavers Addition to the Town of Miners City; that the circuit court find there is no alley-way, walkway or passageway across defendant's Lot No. 20, Block 2, as contended for by the plaintiff; and that the circuit court by decree require the plaintiff to remove from defendant's Lot No. 20, Block 2, all buildings and other structures which plaintiff has built or constructed

thereon; and for further relief. And defendant's answer to the amended and supplemental bill of complaint further prays that the defendant be granted general relief.

Later the defendant filed a rejoinder to plaintiff's replication to defendant's answer, and the plaintiff, Virgie Kertesz, filed a replication to defendant's answer to plaintiff's amended and supplemental bill of complaint, but by inadvertence defendant's rejoinder to the replication of plaintiff was filed before the replication to defendant's answer to plaintiff's amended and supplemental bill of complaint was filed.

In plaintiff's replication to defendant's answer, it is averred that if there is a discrepancy of ten or twelve feet in Block No. 2, Beavers Addition to the Town of War, the shortage would not occur in the center of the layout of the twenty-three lots contained in Block 2 of Beavers Addition, and as contended by the defendant between Lots Nos. 20 and 21; but the error should be ascertained by a survey beginning either at Lot No. 1 or Lot No. 23, and extending in either direction "depending on which lot the engineer would start from"; and further the replication alleges that the actual and true survey of the area of land, that is Block 2, of Beavers Addition to the Town of War, will disclose that such shortage occurred either in Lot No. 1 or Lot No. 23 of Block 2, and that the plaintiff will be able to prove, and has proved, by more than a preponderance of the evidence that the old fence between Lots Nos. 20 and 21 has for many years been recognized as the division line between the two lots.

In defendant's rejoinder to the replication it is averred that the way to ascertain accurately the division line between Lots Nos. 20 and 21 of Block 2 of Beavers Addition to the Town of War, is to begin at Lot No. 1, which adjoins the Hood Addition, and from that point reproduce on the ground the property and lots shown as constituting "Beavers Second Addition", according to the map of record, that is defendant's exhibit "G", which map, it is alleged, is the basis for the common title of both plaintiff and defend-

ant; that defendant has clearly established that plaintiff's buildings on Lot No. 21 encroach on defendant's Lot No. 20 _____ feet; that the beginning of "Beavers Second Addition" is Lot No. 1, not Lot No. 23; that the defendant has shown that a strip of twelve feet or more in width of plaintiff's Lot No. 21 actually was conveyed by A. M. Harman and wife to C. S. Brown and others, and that the defendant is not required to make such a showing, but did so in order to show that plaintiff's buildings occupy a' part of defendant's property. The rejoinder further avers that it is not true, as alleged in plaintiff's replication, that the evidence discloses that the owners of Lots Nos. 20 and 21 have for many years recognized a fence between their properties, but, on the contrary, the evidence clearly establishes that the defendant never recognized said fence as the dividing line between the properties, and that he had numerous negotiations with plaintiff's predecessors in title and with plaintiff before 1945 respecting the division line between the two properties; that neither defendant nor anyone else knew the exact location of the property line until in 1945, when the defendant employed L. A. Osborn, an engineer, to establish accurately the division line between defendant's Lot No. 20 and plaintiff's Lot No. 21; that pursuant to Osborn's employment, L. A. Hornby, who later became plaintiff's witness, together with others, after working over a half a day in surveying, established the line between Lots Nos. 20 and 21, upon which defendant now relies, and it was not until that time, to-wit, 1945, that the defendant or anyone else knew the correct division line between the properties; that plaintiff in 1945 knew and was advised of the location of the division line between the two properties; that at that time she had not erected her brick and cinder block building, and, therefore, defendant says that the fence was never recognized as the division line between the properties of the plaintiff and defendant; that all accurate and reliable surveys which have been made disclose, without question, that the division line between Lots Nos. 20 and 21 is located several feet south of the fence, upon which plaintiff relies; that the only person

who has recognized the fence as the division line between the properties is the plaintiff herself; and the rejoinder prays as by his answer defendant has already prayed.

In addition to the maps filed as exhibits to defendant's answer, there was introduced in evidence before the reopening of the case, a map designated as "Defendant's Exhibit No. 7," made a part of the record by the testimony of defendant's witness, E. C. Zick, a contracting and civil engineer, which shows, among other things, Lots Nos. 19, 20, 21, 22 and 23, and the red line designated as the "true line" by the witness, which line runs through the large restaurant building erected by the plaintiff; through an old house which was moved to the rear thereof and originally constituted what in the record is known as the original "Beach house"; and through an outbuilding or coal shed, likewise erected by the plaintiff in the place of a building constructed of wood, which "true line" was decreed by the circuit court to be the dividing line between plaintiff's and defendant's properties.

Likewise on direct examination by defendant's witness Zick there was introduced at the original hearing "Defendant's Exhibit No. 8", which was a map purporting to show "The location of lots 19 & 20 in the Beavers addition to the town of War", as located by H. A. Kiser, a civil engineer, prepared by L. A. Osborn, an engineer, which shows the plaintiff's frame building prior to the location of the restaurant building to the front thereof, and the moving of the frame building to the rear for the purpose of erecting the restaurant building. This map shows that the frame dwelling house and store building, which the record discloses belonged to the defendant, are located on Lot No. 19, but extend slightly over on defendant's Lot No. 20, and to some material extent on Lot No. 18 adjoining defendant's Lot No. 19.

"Plaintiff's Exhibit No. 1", which is a large map of the Town of War, too large to have been inserted in the printed record, purporting to have been prepared on December 10, 1923, by H. A. Kiser, engineer, was offered by plaintiff

and introduced in evidence after the case was reopened. This map shows, among other things, Block 2 of Beavers Addition to the Town of War, including Lots Nos. 19, 20, and 21, which evidently was the plat on the basis of which defendant's exhibit No. 8, as well as defendant's exhibit "I" to defendant's answer, which shows Lots Nos. 19, 20, and 21, before plaintiff's frame dwelling house was moved back and plaintiff's restaurant building was erected on the front of her claimed property on McDowell Street, was prepared.

In addition to the large, overall map of the Town of War, filed as exhibit No. 1 by plaintiff, the plaintiff through her witness, L. A. Hornby, a civil engineer, introduced in evidence a plat, designated in the record as "Plaintiff's Exhibit-Hornby No. 2-Map", prepared by the witness, L. A. Hornby, purporting to show Lots Nos. 18, 19, 20, 21, 22, and 23, and the structures thereon, which map bears the legend "Map prepared from survey made in connection with suit in the circuit court of McDowell County, West Va., styled Virgie Kertesz vs. Quinto Faligiano, August 6, 1952." This map shows that the structures claimed by plaintiff are entirely on Lot No. 21, and defendant's dwelling house on defendant's Lots Nos. 19 and 20. The map shows and the witness Hornby, who prepared it, testified of the existence of an old fence erected about 1914 as constituting the dividing line between Lots Nos. 20 and 21, and the remains of an old board walk between the fence and plaintiff's restaurant building, leading to an old concrete walk, which ran around the restaurant building and in front of the dwelling house.

The foregoing statement concerning the pleadings filed by plaintiff and defendant and some of the exhibits which bear pertinently on the question whether this case is one which involves the location of a disputed boundary line or lines, may appear to be unseemly elaborate; but some of the important pleadings have been so unscientifically and ineptly drawn that only a statement *in extenso* of the contents of all of the pleadings will help to solve the

important jurisdictional question, which, as heretofore stated, is the threshold question in this case.

Initially, as heretofore stated, the plaintiff filed a bill of complaint designating Lot No. 21 in Block 2 of Beavers Addition to the Town of War erroneously as "Lot No. 33 (Thirty-three), in the Beavers addition to the town of Miners City (now known as War), * * * facing on the right of the N. & W. Railway Company, a distance of thirty (30) feet, and running back between parallel lines a distance of One Hundred, (100) feet", in which bill of complaint plaintiff proceeded, as she did in the examination of her witnesses taken in the earlier part of the trial, on the theory that the alleyway in question was a public alleyway having been dedicated to the public use. This theory was discarded by plaintiff in the early stages of the taking of the evidence bearing on her claim to relief, and plaintiff's position in that regard was promptly abandoned in the pleadings, when the defendant filed an answer correctly alleging that plaintiff is the owner of Lot No. 21 of Block 2 of Beavers Addition to the Town of War, as shown on the only recorded map introduced in evidence in this case, in reference to which both parties, as well as all other lot owners in Block No. 2 of Beavers Addition to the Town of War, bought their respective lots, except War Motor Sales, the description of which Lot No. 21, as alleged in defendant's answer to plaintiff's original bill of complaint discloses that it is a thirty-foot lot running with the line of the Norfolk and Western Railway Company, extending back between parallel lines to the edge of Dry Fork River, a distance of one hundred fifty feet, more or less; and that the westerly line of plaintiff's Lot No. 21 adjoins the easterly line of defendant's Lot No. 20.

Defendant's answer further alleges that the defendant is the owner of Lots Nos. 19 and 20, in Block 2, in Beavers Addition to Miners City, now known as War, and there is no alleyway such as is alleged in plaintiff's bill of complaint laid out on the map or plat of "Miner City Addition" to the original Town of Miners City; that there are no

physical markings or evidence on the grounds showing the alleged alleyway; and that the alleyway alleged in plaintiff's bill of complaint is on defendant's Lot No. 20, Block 2, as shown on the map of "Miner City Addition" prior to the time when plaintiff, on June 5, 1944, acquired her title to Lot No. 21, Block 2, Beavers Addition to the Town of War; and that the use of a part of defendant's Lot No. 20 in Block 2 was "by acquiescence, permission and consent of the defendant"; and that the passing over and across defendant's Lot No. 20, Block 2, by plaintiff and others amounted to only a license revocable at defendant's will, and did not become adverse or hostile until the delivery of possession to the plaintiff of Lot No. 21 on June 5, 1944. So with the filing of this answer by the defendant there was injected in the case the disputed question as to the location of the dividing line of plaintiff's Lot No. 21 and defendant's Lot No. 20.

Plaintiff's case is properly in a court of equity only if from the pleadings and the proof the case comes within the rule set forth in point 1 of the syllabus of *Smith* v. *Haymond,* 135 W. Va. 638, 64 S. E. 2d 105: "A court of equity has jurisdiction of a suit for an injunction to restrain the interference with a disputed right of way, where the suit does not involve the location of disputed boundary lines, or an alleged trespass on disputed land, though the bill of complaint does not contain an averment that an action at law is pending, or is to be brought, to determine the disputed right of way, or that the right of way has been determined by a prior adjudication."

Bearing directly upon the jurisdictional question before us is the rule that a court of equity has no jurisdiction of a suit brought solely for the purpose of trying the title to land. Thus, it is stated in 7 M. J., Equity, Section 8, and cases cited under note 15, that a court of equity has no jurisdiction to try the title to land or boundaries of land between adverse claimants, when the plaintiff has no equity against the defendant claiming adversely to her. Conversely, the holder of the legal title to land, who is out of possession, has available to him the action of eject-

ment as a proper remedy. Lile's Notes, 5 Va. Law. Rev. 205. And if the instant plaintiff has the legal title to the disputed strip of land, accompanied by the right of possession to the land in dispute, ejectment will lie. Point 4 of the syllabus of *Green* v. *Abbott,* 90 W. Va. 376, 110 S. E. 707, in which this Court held: "Though, by statute, ejectment lies in any case in which a writ of right could have been brought before July 1, 1850, in the State of Virginia, right of possession of the land sued for at the time of the commencement of the suit is an essential element of the plaintiff's cause of action." See generally 6 M. J., Ejectment Section 10. Certainly there was available to plaintiff the proceeding at law to establish the disputed property line between Lot No. 20, owned by the defendant, and Lot No. 21, owned by the plaintiff, under the rather recent statute contained in Section 31, Article 4, Chapter 1, Acts of the Legislature, Regular Session, 1945, adding the new Section 31, pertaining to the ascertainment and designation of property lines between conterminous landowners.

In determining the jurisdictional question before us, little discussion is required of plaintiff's amended bill of complaint, which was filed before the case was reopened at the instance of Judge R. D. Bailey. From this amended bill of complaint it appears that plaintiff is the owner of Lot No. 21 of Block 2 of Beavers Addition to the Town of Miners City, now known as War, as shown on the recorded map, and that defendant has owned Lots Nos. 19 and 20 of Block 2 of Beavers Addition to the Town of War since July 23, 1919, and that "the property owners", not indicating specifically which property owners, erected about thirty-seven years ago a fence enclosing Lots Nos. 20 and 21, in such manner that an alley has been left open, which "has become the common property of the City of War", and has been used by the "citizens of the said City of War, for more than to-wit, thirty-seven years." The gravamen of the amended bill of complaint is that the rights of the parties have been established by the passage of time, ineptly designated in the amended bill of complaint as the operation of the "Statute of Limitations", which the amend-

ed bill of complaint alleges has "run against the owner-ship of the same", indicating inferentially the ownership and public nature of the alleyway. This amended bill of complaint is of no moment in this suit, however, even if the court had jurisdiction of the suit as a court of equity, because it contains no prayer for relief, special or general. So for the effective pleadings in this case we must look to the answer to the plaintiff's amended bill of complaint, plaintiff's amended and supplemental bill of complaint, and defendant's answer to the amended and supplemental bill of complaint to ascertain whether this is a suit to establish a disputed right of way which does not involve a dispute as to a boundary line.

The answer to the amended bill of complaint alleges that the plaintiff is the owner of Lot No. 21 of Block 2 in Beavers Addition to "Miner City, or the Town of War"; that the plaintiff was limited to the description of her property set out in the deed of June 5, 1944, whereby the property was conveyed to her by Bessie Hudler and her husband, the description of which property in the deed is that her property is Lot No. 21 of Block 2, Beavers Addi-tion, as shown on the recorded map of Beavers Addition to the Town of Miners City; and that the strip of land which plaintiff is claiming as a public alleyway was not conveyed to her by the aforesaid deed; but, on the con-trary, the defendant by deed from his brother Fillippo Falgiano, dated July 23, 1919, became the owner of the property lying within the lines of Lots Nos. 19 and 20 of Block 2, as shown on "the only accepted and recognized map of the Beavers Addition to the Town of Miner City * * * of record in" said county court clerk's office; and that though the defendant by virtue of Section 3 of Article XIII of West Virginia Constitution has acquired or re-tained the property in question by having paid taxes on the disputed strip of land continuously through the years 1920 to 1951, inclusive, the plaintiff, Virgie Kertesz, has never paid any taxes on the strip of land; and after various other allegations the answer by way of affirmative relief prays that the court "fix the true and proper boundary

line, dividing Lots Nos. 20 and 21, Block 2 in the Town of War, McDowell County, West Virginia, as the same appears on the map of record", and that the court "find that there is no alleyway, walkway, or passageway across the defendant's Lot No. 20, Block 2, as contended by plaintiff"; and further prays for general relief. Thus the answer places in dispute the boundary line between plaintiff's Lot No. 21 and defendant's Lot No. 20.

In plaintiff's amended and supplemental bill of complaint it is alleged that the disputed strip of land is located on, along and by the side of plaintiff's Lot No. 21, and "that said strip, piece, and parcel of land extends along and on part of Lot No. 20 owned by defendant to Dry Fork Branch." Likewise plaintiff's amended and supplemental bill of complaint puts in dispute the property line between plaintiff's Lot No. 21 and defendant's Lot No. 20.

Defendant's answer to plaintiff's amended and supplemental bill of complaint, though it contains many allegations not bearing on the question of the jurisdiction of the circuit court, acting as a court of equity, to enter the decree complained of, alleges that there is no strip, piece or parcel of land located either on, along or by the side of plaintiff's Lot No. 21, nor over and on Lot No. 20 owned by the defendant.

So it appears that the pleadings drawing the questions in issue in this case show of themselves that the disputed right of way is dependent upon a dispute as to the dividing line between plaintiff's Lot No. 21 and defendant's Lot No. 20, and it is on the basis of this issue that the parties, both plaintiff and defendant, proceeded to introduce evidence and try the case.

This brings us to a discussion of the evidence, but only such part thereof as bears on the question whether a disputed boundary line is brought in issue in determining the question of the disputed alleyway.

Before discussing the evidence introduced by the parties, which seems to us to bear upon the jurisdiction of the

court, it seems important to note the stipulation entered of record before the case was reopened, which bears directly upon the existence of a fence, concerning which both plaintiff and defendant and other witnesses, including E. C. Zick, engineer, who testified for the defendant both before and after the case was reopened, and on the basis of the existence of which fence plaintiff's witness, L. A. Hornby, a civil engineer, who was also county engineer of McDowell County, testified, after the case was reopened, that the walkway claimed by plaintiff as having been located on plaintiff's Lot No. 21, and the fence described in the stipulation, was the basis of Hornby's position that the fence marked the dividing line between defendant's Lot No. 20 and plaintiff's Lot No. 21.

It appears beyond peradventure from this record that prior to the time that plaintiff, Virgie Kertesz, became the owner of Lot No. 21, there was an old fence which separated plaintiff's Lot No. 21 from defendant's Lot No. 20, vestiges of which at least evidently remain on the ground and were used by plaintiff's witness, L. A. Hornby, in his testimony adduced on the reopening of the case. We say this in particular because the record discloses the following stipulation, which, in our opinion, bears pertinently on the question whether this case is cognizable in a court of equity because it involves a disputed property line: "It is stipulated by and between the parties hereto that prior to 1947, and from the time the frame house was originally erected on Lot 21, the living quarters on the second floor of the frame dwelling house were occupied by someone other than those who occupied the first floor, and that to gain access to the living quarters on the second floor, the occupants used the gate which is located approximately in the center of the lot, and upon entering the gate, they would bear to the right and proceed around the side of the house next to the fence which separated the lots in question, and that this pathway from the gate around the side of the house was used until Mrs. Kertesz purchased her lot and moved the frame dwelling to the back thereof, at which time the pathway was extended to the street in

front of the property, which was in the year 1947, and at all times said pathway was on the side of the fence next to the Kertesz dwelling."

The foregoing recital of the allegations of the pleadings, the matters contained in the exhibits heretofore referred to, and the stipulation requires this Court to make only cursory reference to the evidence adduced under the pleadings to determine whether this case is properly cognizable in a court of equity. In the first place, aside from the pleadings themselves, the conduct of the case was indeed tortious, rendering the writing of this opinion difficult without seemingly undue prolixity.

We have noted in the examination of this record that the plaintiff abandoned the initial theory that the alley in dispute was dedicated to the public, and proceeded to introduce evidence on her behalf in chief, on the theory that the alleyway was a part of the lot conveyed to her by Hudler and wife, designated as Lot No. 21, and that the old fence was the division line between plaintiff's Lot No. 21 and defendant's Lot No. 20. On the original hearing the defendant, Quinto Falgiano, assumed the position and adduced evidence tending to show, that the alleyway was a part of his Lot No. 20, and that the use thereof was only permissive, which permissive use was sustained by the holding of the trial court, as shown by the trial court's letter of opinion, addressed to counsel for plaintiff and defendant before the case was reopened, and likewise it was the holding of the court, as shown by the court's final opinion, which was made a part of the record after the case was reopened and submitted to the court for its decision, and by the final decree of the circuit court, to which this appeal was granted, that the alleyway on defendant's Lot No. 20 and the use thereof by plaintiff and others was permissive.

The trial of this case proceeded in a tortious and wholly unorthodox manner, when we find that the record discloses: (1) That the plaintiff introduced her evidence in chief and then rested; (2) the defendant on the original

hearing then proceeded to examine Mrs. Georgia Perry, a witness for the defendant, who was cross-examined by defendant's attorney; (3) then the case was reopened for the purpose of the taking of further evidence on plaintiff's part, during which the plaintiff introduced and examined in addition several witnesses, including plaintiff's witnesses Bertha May Rose, Jim B. Beavers, and Parker Burnett, and after the examination of the latter witness by plaintiff's counsel, cross-examination by defendant's counsel, re-direct examination by plaintiff's counsel, and re-cross-examination by defendant's counsel, the plaintiff rested the second time; and (4) all of this evidence adduced on the original hearing was followed by rebuttal testimony on behalf of plaintiff and sur-rebuttal evidence on behalf of the defendant.

Then the court, having indicated that it was ready to decide the case, the motion for reopening was made and granted, and plaintiff's amended and supplemental bill of complaint and defendant's answer thereto were filed. On the reopening of the case, evidence was introduced by both plaintiff and defendant, which, as shown in particular by the testimony of defendant's witness, E. C. Zick, civil engineer, and plaintiff's witness, L. A. Hornby, civil engineer, involved the property line between defendant's Lot No. 20 and plaintiff's Lot No. 21.

Both at the original hearing and after the reopening of the case at Judge Bailey's instance, defendant's witness, E. C. Zick, testified that on the basis of an extensive survey which he made, using the northwest corner of Lot No. 1 of Block 2, Beavers Addition to the Town of War, which is also the northwest corner of Block 2, and the common corner to the northeast corner of what is known as the Hood Addition to the Town of War, he prepared a map, introduced in evidence as "Defendant's Exhibit No. 7", which plat shows a red line through the buildings on plaintiff's Lot No. 21.

Though basing his testimony on this survey and on the thesis that the brick garage building of War Motor Sales

was constructed so that it occupied all of Lot No. 22, a part of Lot No. 21, and only a part of Lot No. 23, thus leaving title to about twelve feet immediately east of the garage building in Harman, defendant's witness Zick established the "true line", shown on defendant's exhibit No. 7, which "true line" was adopted by the court in its final opinion made a part of the record, and in the final decree to which this appeal was granted, as the correct division line between plaintiff's Lot No. 21 and defendant's Lot No. 20. Plaintiff's witness, L. A. Hornby, civil engineer, testified, after the case was reopened, contrariwise that while the survey made by defendant's witness, E. C. Zick, purporting to establish the "true line" was "arithmetically" correct, Zick's survey is incorrect in that it ignores the existence of an old fence, which the witness designated as the dividing line between Lots Nos. 20 and 21. Hornby testified that if there is a shortage of twelve feet in the frontage on McDowell Street in Block 2 of Beavers Addition, it should not be allocated entirely to plaintiff's Lot No. 21 and defendant's Lot No. 20 alone, and that taking the old fence as a monument, and ignoring Zick's and other earlier surveys, which evidently had as the starting point the northwest corner of Lot No. 1 of Block 2 of Beavers Addition to Miners City, Hornby prepared, and on the basis of his testimony there was introduced in evidence "Plaintiff's Exhibit-Hornby No. 2-Map", which witness testified correctly shows the lot lines designated on the map prepared by him, so that Lot No. 21, claimed by the plaintiff, has a thirty-foot frontage on McDowell Street, which lot embraces an "old board walk", evidently the alleyway or walkway claimed by plaintiff. Hornby's plat shows a fence immediately to the east of the "old board walk", and the witness testified, as the plat prepared by him shows, that notwithstanding the inclusion of the "old board walk" in plaintiff's Lot No. 21, Lot No. 20, claimed by the defendant, also has a thirty-foot frontage on McDowell Street.

Further reference to the pleadings and testimony is unnecessary, as this case has resolved itself into one which

involves a disputed right of way, in which there is a disputed boundary line, and does not come within the norm established by this Court in point 1 of the syllabus of *Smith* v. *Haymond, supra.*

This case seemingly involving title to land, the issues are not cognizable in a court of equity. *Gilkeson* v. *Smith,* 5 W. Va. 128; *Franks* v. *Cravens,* 6 W. Va. 185; *Freer* v. *Davis,* 52 W. Va. 1, 43 S. E. 164, 59 L.R.A. 556, 94 Am. St. Rep. 895; *McDonald* v. *Jarvis,* 64 W. Va. 62, 60 S. E. 990; *Williamson* v. *Wayland Oil & Gas Co.,* 79 W. Va. 754, 92 S. E. 424; *Lake O'Woods Club* v. *Wilhelm,* 126 W. Va. 447, 28 S. E. 2d 915. The basic rule governing this case is stated in point 3 of the syllabus of *Bright* v. *Knight,* 35 W. Va. 40, 13 S. E. 63: "A court of equity will not settle the title and boundaries of land, when the plaintiff has no equity against the party who is holding the land." 7 M. J., Equity, Section 8.

Where, as here, a court of equity has no jurisdiction to enter the decree complained of, this Court will reverse the decree, but not dismiss the bill of complaint and remand the cause to the trial court with directions that the case be transferred, as provided by Code, 56-4-11, to the law side of the court where, if plaintiff is so advised, she may amend her pleadings so that if she has the title and the right to possession of the disputed strip of land, she may proceed by ejectment under the provisions of Code, Chapter 55, Article 4; or if she is in possession of the disputed strip of land she may, if so advised, amend her pleadings so as to proceed under Section 31, Article 4, Chapter 1, Acts of the Legislature, Regular Session, 1945, adding Section 31 to Code, Chapter 55, Article 4, and thereby the circuit court may establish the boundary line between plaintiff's Lot No. 21 and defendant's Lot No. 20, in an action at law, in which both parties are entitled to a trial by jury, and which trial shall be conducted in accordance with the statute on the law side of the court. *Huffman* v. *Mills,* 131 W. Va. 218. See generally as to the proper procedure 7 M. J., Equity, Section 11; *Wilson* v. *Mutual Pro-*

*tective Ass'n.,* 120 W. Va. 465, 199 S. E. 258, and *Vinson* v. *The Home Insurance Company,* 123 W. Va. 522, 16 S. E. 2d 924.

It is regrettable that the record, involving as it does the testimony of many witnesses, the preparation and introduction of many exhibits and printing costs in a substantial amount, must be discarded on the remand. However, by stipulation between the attorneys for the parties litigant the pertinent portions of the record may be used at the trial of this case after the remand.

For the foregoing reasons the decree of the Circuit Court of McDowell County, to which this appeal was granted, is reversed, and this case is remanded to the circuit court with directions that the same be transferred, as provided by Code, 56-4-11, to the law side of the court, with the privilege to plaintiff to amend her pleadings as she may be advised and as may be proper, with the right of plaintiff to proceed to obtain such equitable relief as may be ancillary to the trial of the case, under proper pleadings, in a court of law, as she may be advised and as may be proper.

*Decree reversed; case remanded with directions.*